UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| GENE STILLPASS and<br>SUSAN STILLPASS,<br><br>Plaintiffs,<br><br>v.<br><br>MORTGAGE FINANCING PLANNERS,<br>LLC, a Minnesota limited liability<br>company; MORTGAGE INNOVATIONS,<br>INC., a Minnesota Corporation;<br>MORTGAGE INNOVATIONS, LLC, a<br>Minnesota limited liability company;<br>KRISTOPHER C. HOWARD;<br>GERARD TUMA; REBECCA TUMA;<br>and GN MORTGAGE, LLC, a foreign<br>limited liability company;<br><br>Defendants. | Civil No. 07-2323 (JRT/FLN)<br><br><br><br>**MEMORANDUM OPINION AND<br>ORDER DENYING DEFENDANT<br>GN MORTGAGE'S MOTION FOR<br>SUMMARY JUDGMENT** |

Michael T. Kallas, **KALLAS & ASSOCIATES, LTD**, Suite 652, 4940 Viking Drive, Edina, MN 55435, for plaintiffs.

Chad A. Kelsch, Eldon J. Spencer, Jr., and James M. Jorissen, **LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.**, 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402, for defendants Mortgage Financing Planners; Mortgage Innovations, Inc.; Mortgage Innovations, LLC; Kristopher Howard, Gerard Tuma and Rebecca Tuma.

Dana K. Nyquist and Michael J. Orme, **ORME & ASSOCIATES, LTD**, 4040 Nicols Road, Eagan, MN 55122, for defendant GN Mortgage, LLC.

This case concerns the interests of various parties in a property located in Apple Valley, Minnesota. The property was the subject of a series of transactions detailed

below. Defendant GN Mortgage, LLC ("GN") now moves for summary judgment, seeking equitable relief clarifying its interest in the property. As set forth below, the Court concludes that GN's request is premature, and denies its motion without prejudice.

## BACKGROUND[1]

On July 6, 2001, Gene and Susan Stillpass, a married couple, purchased a home at 13640 Gurney Path in Apple Valley, Minnesota ("Property"). To obtain financing for this transaction, the Stillpasses granted a mortgage on the Property to Tradition Mortgage in the amount of $275,000. (Nyquist Aff., Ex. A. at Sched. B. ¶11.) This mortgage was assigned to Wells Fargo Bank on the day of the sale and properly recorded (hereinafter referred to as "Wells Fargo Mortgage"). On or about February 26, 2004, the Stillpasses granted a second mortgage on the Property to Donald E. Sobania ("Sobania Mortgage"). The Sobania Mortgage was in the amount of $75,000, and was also properly recorded.

Over time, the Stillpasses fell into arrears on the Wells Fargo Mortgage, and in early 2005 Wells Fargo commenced foreclosure proceedings. A foreclosure sale was held on February 10, 2005, and Wells Fargo purchased the Property at this sale for $280,681.23. (Nyquist Aff., Ex. A. at Sched. B. ¶11.) Under Minnesota law, the Stillpasses had a right to redeem the Property by paying Wells Fargo this sale price plus interest within six months. *See* Minn. Stat. § 580.23, subd. 1.

The Stillpasses contacted Kristopher C. Howard to seek help with exercising their redemption rights. Howard was the President of Mortgage Financial Planners, LLC

---

[1] For the purposes of this summary judgment motion, the Court considers the facts and evidence in the light most favorable to plaintiffs, the non-moving party.

("MFP"), and had once helped the Stillpasses avoid foreclosure on another property. The Stillpasses allege that they were told by Howard that he would arrange a transaction as follows: (1) the property would be "sold" to an investor; (2) the investor would satisfy all obligations to Wells Fargo and Sobania; (3) the Stillpasses would receive a check at the closing that they would promptly sign over to Howard, as a down payment on a "repurchase" of their home; and (4) thereafter, the Stillpasses would pay "approximately $2900" per month and would retain the right to occupy the home so long as they continued making payments. The Stillpasses allege that while this transaction was to be "structured as an outright transfer," its "essence" was to be a "loan" from the investor secured by an interest in the Property (i.e. a mortgage). (Complaint at ¶21.)

A short time later, Howard located an "investor," defendant Gerard Tuma. On or about April 15, 2005, the Stillpasses entered into a "purchase agreement" with Tuma. The Stillpasses allege that this agreement was structured in the manner outlined above. However, there were no documents prepared that memorialized (1) the obligation of the Stillpasses to sign any funds over to Howard; (2) the obligation of the Stillpasses to make continuing monthly payments; (3) the right or intent of the Stillpasses to repurchase the property; or (4) the Stillpass's right to continue to possess the property.

The closing of the transaction occurred on or about August 9, 2005 – the day before the expiration of the Stillpass's redemption rights – and the Stillpasses signed a warranty deed conveying their interest in the Property to Tuma. Tuma then paid $296,476.53 to satisfy all obligations to Wells Fargo and $65,000 to satisfy all obligations to Sobania. Tuma also disbursed $76,295.97 to the Stillpasses. The

Stillpasses indicate that they were instructed to sign this payment over to Howard – as set forth above – and that they did so.

Tuma had obtained financing for the "sale" by granting two mortgages on the Property to GN, for $359,600 and $49,900.  The only document provided to GN at the time of the closing was the purchase agreement, and GN alleges that it had no indication that the Stillpass-Tuma transaction was anything other than a straight-forward sale.  The Stillpasses respond that a number of details should have made GN suspicious about whether the transaction was an outright transfer, including the following: (1) the transaction occurred in the shadow of a foreclosure; (2) the purchase agreement lacked some critical information; and (3) the settlement statement did not indicate that a commission was paid.  Both of GN's mortgages were recorded on September 30, 2005.

Following the transaction with Tuma, the Stillpasses remained in possession of the Property.  They allege that nearly a year later, in July 2006, Howard suggested that they attempt to refinance their debt through MFP, to put them in a position to "payoff" Tuma.  The Stillpasses note that in light of this suggestion they paid for an appraisal of the Property.

The Stillpasses indicate that Howard later told them that they did not qualify for a new loan.  Nonetheless, the Stillpasses allege that on or about October 11, 2006, they and Tuma executed a contract for deed, whereby the Stillpasses would repurchase the Property from Tuma for $415,000.  This contract for deed was never recorded. (Complaint ¶40.)

On or about April 4, 2007, the Stillpasses received notice that the August 9, 2005, agreement allowing them to occupy and/or repurchase the Property had been cancelled. (Complaint ¶43.)  On the same date, MFP began proceedings to evict the Stillpasses from the Property.

On April 13, 2007, the Stillpasses responded by filing this action against three companies operated by Howard (MFP, Mortgage Innovations, Inc., and Mortgage Innovations, LLC), Howard himself, Gerard and Rebecca Tuma, and GN.  In Count I, the Stillpasses seek a declaration that their conveyance of the Property to Tuma merely created an equitable mortgage.  This count also seeks declarations that: (1) Howard and the companies he operates have no interest in the Property and their attempts to evict the Stillpasses have no effect; and (2) the mortgages granted by Tuma to GN are in fact mortgages upon Tuma's mortgagee's interest in the Property, rather than mortgages on the fee title to the Property.  Counts II-VI allege that all of the defendants other than GN violated various state and federal consumer protection statutes and unlawfully converted the $76,295.97 that the Stillpass's signed over to Howard.

In its Answer, GN asserts it was a bona fide purchaser for value, and that it was unaware of any misconduct by other defendants.  GN also brings counterclaims for equitable subrogation and, in the alternative, equitable subordination.  GN now moves for summary judgment on these claims.  Pursuant to the doctrine of equitable subrogation, GN argues that it should be permitted to step into the shoes of Wells Fargo and Sobania before those lenders were paid off.  Under the doctrine of equitable subordination, GN argues that any interest of the Stillpasses in the Property should be subordinate and

subject to both of GN's mortgages. In its reply brief, GN adds the argument that the Stillpasses are estopped from denying the validity of GN's mortgages under *Esty v. Cummings*, 83 N.W.2d 420 (Minn. 1900).

## ANALYSIS

### I.  EQUITABLE SUBROGATION

Under the doctrine of equitable subrogation, "a person who has discharged the debt of another may succeed in substitution to the rights and position of the satisfied creditor." *Ripley v. Piehl*, 700 N.W.2d 540, 545 (Minn. Ct. App. 2005). "This equitable principle will be applied in the interest of substantial justice when one party has provided funds used to discharge another's obligations if (a) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (b) injury to innocent parties will otherwise result." *Id*. (quotations omitted).

Here, GN notes that it provided funds to discharge the Stillpass's obligations to Wells Fargo and Sobania, and asks that the Court place it in the shoes of those satisfied creditors. The "justifiable or excusable mistake of fact" that GN relies on is its belief that the Stillpass-Tuma transaction was a straight-forward sale, rather than a financing transaction creating an equitable mortgage. However, whether this was a mistake at all is not yet settled. That question will depend on the resolution of Stillpass's equitable mortgage claim, which this Court has not yet had occasion to address. If the Court determines that the Stillpass-Tuma transaction is properly characterized as an equitable mortgage, then it may indeed be in GN's interest to pursue equitable relief. However, if

the Court rejects the Stillpass's claim – and characterizes the Stillpass-Tuma transaction as a straight-forward sale – then GN will have been right all along, and its motion will have been unnecessary.  In short, until the Stillpass's equitable mortgage claim has been resolved – and it is clear whether GN's motion is necessary – this Court will not issue a ruling assessing mere hypothetical possibilities.  *Cf. Pub. Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005) (noting that as a matter of judicial policy, "courts avoid resolving disputes based on hypothetical facts because to do so would be a poor use of judicial resources").[2]

The Court adds that it is unable to avoid this obstacle by simply resolving the equitable mortgage issue now.  Neither the Stillpasses nor Tuma have filed a motion seeking judgment on that claim.  Thus, while the Stillpasses have offered their view of this issue in their response brief, the Court has not received briefing or heard argument from Tuma.  Tuma's absence is significant, because the Court's resolution of this issue will determine whether he has a mere mortgagee's interest in the Property or whether he is its owner.  The Court will not issue a determination on this significant legal interest until Tuma has had an opportunity to be heard.

---

[2] The Court adds that GN's interests also seem to be best served by waiting for the equitable mortgage determination.  As GN confirmed at oral argument, if the Court grants its equitable subrogation claim, it will be owed approximately $361,000, reflecting the discharged mortgages of Wells Fargo and Sobania.  However, if the Court were to determine that the Stillpass-Tuma transaction was a straight-forward sale, then GN would continue to hold mortgages totaling $409,500.  In other words, the Court's determination on the equitable mortgage claim may well determine whether equitable subrogation is in GN's financial interest.

## II. EQUITABLE SUBORDINATION

The Court is similarly unable to rule on GN's equitable subordination claim. GN argues that "any interest [the Stillpasses] claim, or are awarded in, the Property" should be subordinated to both of the mortgages held by GN. (Memorandum of Law in Support of Motion for Summary Judgment at 11.) As explained above, however, the Court is not yet in a position to decide whether the Stillpasses *have* an interest in the Property.[3] Until the Court has determined what the Stillpass's interest is and fully considered the circumstances in which it was created – after a proceeding in which the defendants who were party to the August 9 purchase agreement have had an opportunity to present argument – the Court finds that it would be premature to assess whether it would be equitable to subordinate that interest to the interests of GN.[4]

In sum, GN's motion is premature. Each of GN's arguments is contingent on a hypothetical future ruling on the Stillpass's equitable mortgage claim. While it is possible that this ruling will characterize the Stillpass-Tuma transaction as the creation of an equitable mortgage, it also is possible that it will not. If it does not, then GN's motion may be unnecessary. Thus, until the equitable mortgage claim has been addressed – in a proceeding involving all interested parties – GN's claims are not ripe for judicial

---

[3] The Court emphasizes that it is not expressing any view as to the merits of Stillpass's equitable mortgage claim. As noted above, the Court has not yet heard argument from all parties to the underlying transaction.

[4] This same reasoning applies to GN's argument that the Stillpasses are estopped from denying the validity of GN's mortgages. It will only be necessary to resolve this issue if the Court determines that the Stillpass-Tuma transaction created a mere equitable mortgage. That issue is not yet before this Court. If the Court should later determine that this transaction created an equitable mortgage, GN will be free to raise this argument then.

- 9 -

decision.  Accordingly, GN's motion is dismissed without prejudice.  GN is free to raise its arguments again once the Stillpass's claim has been resolved, if that ruling renders those arguments necessary.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant GN Mortgage's motion for summary judgment [Docket No. 28] is **DENIED without prejudice**.


DATED:   October 27, 2008              ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                       United States District Judge